**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

HASSAN ABPIKAR,

          Plaintiff,

      v.

BEATRIZ THOMAS, et al.,

          Defendants.

Case No.  5:25-cv-02226-BLF

**ORDER GRANTING MOTION TO DISMISS**

[Re:  ECF No. 28]

Pro se Plaintiff Hassan Abpikar asserts fourteen causes of action against Defendants Patricia Sandoval, George Sandoval, Beatriz Thomas, and Sara Scott,[1] alleging that Defendants conspired to rob him of his iPhone, use his iPhone to track his location, and arrest him without probable cause.  ECF No. 25 ("FAC").  Mr. Sandoval filed an answer denying most of the factual allegations made against him.  ECF No. 48.  Ms. Thomas and Ms. Scott (together, the "DMV Defendants") now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 28 ("Mot."); ECF No. 42 ("Reply").  Mr. Abpikar opposes the DMV Defendants' motion.  ECF No. 37 ("Opp.").  The Court finds the matter suitable for decision without oral argument and VACATES the hearing set for May 28, 2026.  *See* Civ. L.R. 7-1(b).

For the following reasons, the motion is GRANTED.

## I.    BACKGROUND

The factual allegations set forth in the FAC—which the Court treats as true for the purpose of deciding this motion—are difficult to follow but appear to generally focus on an alleged

---

[1] Mr. Abpikar also asserts claims against "5 other unknown DMV officers" and "Does 1 thru [sic] 50."  FAC at 1 (capitalization altered).

conspiracy between Mr. Sandoval and Ms. Sandoval (together, the "Private Defendants") and the DMV Defendants to steal Mr. Abpikar's iPhone, spy on him, and arrest him without probable cause. The FAC alleges as follows.

On April 18, 2023, the Private Defendants approached Mr. Abpikar in a mall parking lot and told him that they were dissatisfied with a car they purchased from his friend. FAC ¶¶ 38–40. The Private Defendants proceeded to physically attack Mr. Abpikar and steal his iPhone, as well as $10,600 in cash and his former roommates' phones from his car. *Id.* ¶¶ 41–43. On April 22, 2023, Mr. Abpikar "discovered that his I-Cloud sent him a security alert indicating that his iPhone was being accessed in the City of Milpitas[,]" from which he gathered that the Private Defendants "had delivered the Stolen I-Phone to officer Beatriz and/or officer Scott who searched its digital contents with NO Search Warrant." *Id.* ¶ 46.

Also on April 22, 2023, Mr. Abpikar found a handwritten note left on his car windshield threatening him with a lawsuit unless he "return[ed] the money [the author of the letter] gave [him] for" a car. FAC ¶ 47. On May 18, 2023, the DMV Defendants once again "used triangulation tracking to pinpoint [Mr. Abpikar's] location" while he was exiting from his home, using this information to "unlawfully arrest[] [him] despite lacking probable cause." *Id.* ¶¶ 49–50 (emphasis omitted); *see also id.* ¶ 64. During the arrest, the DMV Defendants seized a new iPhone Mr. Abpikar had purchased. *Id.* ¶ 65. As a result of the arrest, Mr. Abpikar was jailed for a few days before being released on bail and suffered physical and psychological injuries. *Id.* ¶¶ 50–51.

Based on these events in early 2023, Mr. Abpikar concludes that "it is SO OVIOUS [sic] that the [Private Defendants] were SPYING on Abpikar[] [and] taking his pictures in public" at the direction of the DMV Defendants. FAC ¶ 53. Mr. Abpikar further alleges that, because the DMV Defendants "KNEW what exact time Abpikar was leaving his home in order to arrest him," they must have been "using Triangulation System or other Tracking Devices that is [sic] aided by and through Abpikar's I-Phone Cell Tower" to track his "EXACT location at all times relevant." *Id.* ¶ 56. Mr. Abpikar alleges that the search of his iPhone for his location data was conducted by the DMV Defendants without a search warrant. *Id.* ¶ 65.

Of the fourteen causes of action stated in the FAC, ten are asserted against the DMV Defendants.  Claims 1–6 are brought pursuant to 42 U.S.C. § 1983.  Claims 7, 12, 13, and 14 are brought under California law, for violation of the Bane Act, Cal. Civ. Code § 52.1, intentional infliction of emotional distress, negligence, and civil conspiracy, respectively.  Claim 14 for civil conspiracy incorporates the factual predicates for all asserted state law causes of action (i.e., claims 7–13).

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Although Federal Rule of Civil Procedure 15(a) gives the trial court discretion over this matter, the Ninth Circuit has explained that leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (first alteration in original) (first quoting Fed. R. Civ. P. 15(a), then quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*,

United States District Court
Northern District of California

3

United States District Court
Northern District of California

316 F.3d 1048, 1052 (9th Cir. 2003).  In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*.  The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  316 F.3d at 1052.

## III.   DISCUSSION

### A.  Section 1983 Conspiracy Claim

Mr. Abpikar's fifth cause of action for conspiracy to violate civil rights alleges that Defendants "knowingly entered into an agreement—express or implied—to violate Plaintiff's constitutional rights" by "[u]sing civilians as proxy agents," "[a]ssaulting Plaintiff and forcibly taking his I-Phone," "[d]elivering [his] stolen I-Phone . . . directly to DMV officers," "[s]earching Plaintiff's smartphone . . . with NO warrant[,]" "[u]sing digital data . . . to track and locate Plaintiff[,]" and "[a]rresting [him] with NO probable cause approximately one month later."  FAC ¶¶ 168–69.  Defendants argue that the claim is subject to dismissal for failure to plead sufficient facts showing any coordination, meeting of the minds, when the alleged agreement occurred, or what each participant agreed to.  Mot. at 6.  Mr. Abpikar responds that "[c]ivil rights conspiracies may be plead through circumstantial evidence" and that the FAC's allegations "exceed this standard."  Opp. at 8.

To plead a § 1983 claim for conspiracy to violate civil rights, a plaintiff "must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights."  *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999)).  While a plaintiff need not plead that "each participant in the conspiracy . . . [knew] the exact details of the plan," *id.*, conclusory allegations of conspiracy without factual specificity are not enough.  *See, e.g.*, *Simmons v. Sacramento Cnty. Sup. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003).

The FAC does not include any specific factual allegations showing there was an agreement or meeting of the minds to violate Mr. Abpikar's rights.  While Mr. Abpikar speculates that the

4

United States District Court
Northern District of California

Private Defendants robbed him at the direction of the DMV Defendants, he fails to plead any factual allegations plausibly establishing that Defendants conspired and reached a mutual understanding to undertake a course of conduct to violate his rights.  Although it is true that it is sufficient at the pleading stage to allege circumstances from which a conspiracy may plausibly be inferred, he has failed to do so here.  The Court agrees with Defendants that "these conclusory allegations of conspiracy are insufficient to state a claim for conspiracy under Section 1983." *Wood v. City of Santa Ana*, No. 18-cv-00643-AG-ADS, 2019 WL 8135572, at *2 (C.D. Cal. July 10, 2019).

At this stage of the proceedings, the Court cannot determine that amendment would be futile, and there is no indication that Mr. Abpikar has acted in bad faith or purposely delayed. While he has amended the complaint once, that amendment was not in response to a motion to dismiss.  The Court will accordingly dismiss the fifth claim with leave to amend.  The fifth claim is asserted against the Private Defendants in addition to the DMV Defendants.  Because the claim is subject to dismissal based on failure to allege an agreement between the Private Defendants and DMV Defendants, the Court dismisses the fifth claim as to all Defendants.  Mr. Abpikar will need to amend the fifth claim to remedy the defects as to both the DMV Defendants and the Private Defendants.

**B.  Section 1983 Warrantless Search Claims**

Mr. Abpikar's third cause of action for violation of his Fourth Amendment rights arising out of Defendants' warrantless search of his iPhone alleges that the Private Defendants "delivered Plaintiff's I-Phone directly to Defendants Beatriz and Scott, who proceeded to search the digital contents of the device without obtaining a warrant, without consent, and without exigent circumstances."  FAC ¶ 130.  Mr. Abpikar's fourth case of action for violation of his Fourth Amendment rights further alleges that Defendants also "used cell phone triangulation technology, GPS-based location tracking or elect[ronic] surveillance tools on Abpikar's NEW I-Phone to locate Plaintiff's exact physical position" while he was leaving his home.  *Id.* ¶ 151 (emphasis omitted).  Defendants argue that these claims are subject to dismissal because Mr. Abpikar "simply concludes that he was tracked, alleging several versions of how the tracking occurred, and

claims that no search warrant was authorized," contending that "[t]here are several viable and more plausible explanations of why [he] was arrested." Mot. at 9–10. Mr. Abpikar responds that the FAC contains specific details as to "HOW officer Beatriz conduct[ed] her investigation" by "SECRETLY informing the two civilians by using the Triangulation and Tracking devices that even her close Co-workers . . . did NOT even have a clue." Opp. at 13–14.

The FAC does not contain any factual allegations showing that the DMV Defendants at any time accessed his iPhone or used his iPhone to track him. Rather, the FAC merely theorizes that the DMV Defendants must have searched the iPhone, inferring that the notification Mr. Abpikar received that the phone was accessed in Milpitas means that it was accessed by the DMV Defendants, as confirmed by the fact that the DMV Defendants "knew" to arrest him at his home rather than "at his work, at school, at the gym, on vacation, or Santana Row." FAC ¶ 68. Neither of these inferences is plausible. Similarly, Mr. Abpikar's suggestion that Ms. Beatriz's silence after he accused her of "searching and seizing [his] Private information with NO Search Warrant" constitutes an admission is unavailing. *Id.* ¶ 83.

As explained *supra*, the *Eminence Capital* factors support granting Mr. Abpikar an opportunity to amend. The Court will accordingly dismiss the third and fourth claims with leave to amend.

### C. Section 1983 False Arrest Claim

Mr. Abpikar's first cause of action for violation of his Fourth Amendment rights arising out of his arrest without probable cause alleges that the DMV Defendants "arrested Abpikar with NO legal justification" because they "ONLY relied on the Insufficient and Incorrect information of the two civilian robbers who Robbed Abpikar out of his cash money, his I-Phone and two Android phones belonging to his Ex-roommates." FAC ¶ 88. Defendants argue that this claim is subject to dismissal because the FAC fails to "demonstrate that there was no probable cause to arrest him" and that "[t]he only factual allegation Plaintiff relies on is the claim that the DMV officers relied on information received from the Sandoval's [sic] in the alleged conspiracy." Mot. at 10–11.

The absence of probable cause is a necessary element of a § 1983 false arrest claim. *See,*

*e.g.*, *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

The FAC does not contain any factual allegations suggesting that the DMV Defendants lacked probable cause to arrest Mr. Abpikar, instead relying on Mr. Abpikar's theory that the DMV Defendants must have coordinated with the Private Defendants and instructed them to steal his phone.  As explained *supra*, the FAC does not plausibly arrest the existence of a conspiracy between the DMV Defendants and the Private Defendants.  Because this is the only factual predicate for Mr. Abpikar's claim that the DMV Defendants lacked probable cause to arrest him, the Court agrees with Defendants that this claim is subject to dismissal.

As explained *supra*, the *Eminence Capital* factors support granting Mr. Abpikar an opportunity to amend.  The Court will accordingly dismiss the first claim with leave to amend.

### D.  Section 1983 Excessive Force Claim

Mr. Abpikar's second cause of action for violation of his Fourth Amendment rights arising out of excessive force alleges that Mr. Sandoval, while acting "at the direction of, and in active coordination with Defendants Beatriz and Scott," acted objectively unreasonably by "grabb[ing] him[] and slam[ing] him violently to the ground."  FAC ¶¶ 109–10.  Defendants argue that this claim is subject to dismissal because the FAC does not allege a deprivation of constitutional rights committed by a person acting under color of state law.  Mot. at 12.

An essential element of a § 1983 claim is that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights.  *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).

The FAC does not contain any factual allegations suggesting that the DMV Defendants used excessive force against Mr. Abpikar, instead relying on Mr. Abpikar's theory that the DMV

United States District Court
Northern District of California

Defendants must have coordinated with the Private Defendants and instructed them to steal his phone. As explained *supra*, the FAC does not plausibly arrest the existence of a conspiracy between the DMV Defendants and the Private Defendants. Because this is the only factual predicate for Mr. Abpikar's claim that the DMV Defendants used excessive force against him, the Court agrees with Defendants that this claim is subject to dismissal.

As explained *supra*, the *Eminence Capital* factors support granting Mr. Abpikar an opportunity to amend. The Court will accordingly dismiss the second claim with leave to amend. The second claim is asserted against the Private Defendants in addition to the DMV Defendants. Because the claim is subject to dismissal based on failure to allege an agreement between the Private Defendants and DMV Defendants, the Court dismisses the second claim as to all Defendants. Mr. Abpikar will need to amend the second claim to remedy the defects as to both the DMV Defendants and the Private Defendants.

### E.  Section 1983 State Created Danger Claim

Mr. Abpikar's sixth cause of action for violation of his Fourteenth Amendment rights arising out of the state-created danger doctrine alleges that the DMV Defendants "took deliberative, affirmative steps to enlist two civilians to act as agents for the DMV's unlawful investigation of Plaintiff." FAC ¶ 195. The Court agrees with Defendants that this claim fails for the same reason as Mr. Abpikar's conspiracy claim. *See* Mot. at 12.

To state a substantive due process claim based on the state-created danger doctrine a Plaintiff must establish that, "the officers' affirmative actions created or exposed him to actual, particularized danger that he would not otherwise have faced." *Knight v. Richardson Bay Reg'l Agency*, 637 F. Supp. 3d 789, 799 (N.D. Cal. 2022). Because the only factual predicate for the DMV Defendants' "affirmative action" was the alleged conspiracy between the DMV Defendants and Private Defendants, the claim is subject to dismissal.

As explained *supra*, the *Eminence Capital* factors support granting Mr. Abpikar an opportunity to amend. The Court will accordingly dismiss the sixth claim with leave to amend.

### F.  State Law Claims

Mr. Abpikar's seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth

United States District Court
Northern District of California

causes of action are brought under state law.  Defendants argue that Mr. Abpikar's state law claims for monetary damages are barred because he has not demonstrated compliance with the claim filing deadline of the Government Claims Act, Cal. Gov. Code § 945.5.  *See* Mot. at 13. Mr. Abpikar does not dispute his noncompliance with the Government Claims Act in opposition.

"Suits for money or damages filed against a public entity are regulated by ... the Government Claims Act." *DiCampli–Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 989 (2012). "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov. Code § 945.4. "When defendants are public employees, the plaintiff must first submit a written claim to the public entity that employs them before filing a lawsuit seeking monetary damages for violations of California law." *Dennis v. Thurman*, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997).

Because the FAC does not allege compliance with the Government Claims Act, the state law claims are subject to dismissal. *Miller v. Adonis*, No. 12-cv-00353, 2019 WL 4076441, at *18 (E.D. Cal Aug. 29, 2019) (finding dismissal of Bane Act claim for failure to comply with the Government Claims Act proper); *accord State of California v. Sup. Court*, 32 Cal. 4th 1234, 1240 (2004) ("California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are . . . *elements of the plaintiff's cause of action* and conditions precedent to the maintenance of the action." (internal citation omitted)).

Because amendment would be futile, dismissal as to the state law claims will be without leave to amend.  *See, e.g.*, *Hartman v. George*, No. 25-cv-09816-BLF, 2026 WL 984243, at *6 (N.D. Cal. Apr. 13, 2026).

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion is GRANTED.

(2) Claims 1, 2, 3, 4, 5, and 6 of the FAC are DISMISSED WITH LEAVE TO AMEND.

(3) Claims 7, 8, 9, 10, 11, 12, 13, and 14 of the FAC are DISMISSED WITHOUT LEAVE

9

TO AMEND as to Ms. Thomas and Ms. Scott.

(4) Mr. Abpikar SHALL file a second amended complaint within fourteen days of the date of this order.

(5) Amendment is limited to curing the defects identified in this order.  No new parties or claims may be added without prior leave of the Court.

(6) This order terminates ECF No. 28.

Dated:  May 22, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

10